UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRUCE RODGERS,

        Plaintiff,

v.                                     Case No. 8:10-cv-263-T-27MAP

TIME CUSTOMER SERVICE, INC.,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

       This is an action alleging violations of the American's with Disabilities Act ("ADA"), the

Florida Civil Rights Act ("FCRA"), and Florida's Workers' Compensation Law ("Workers'

Compensation Law").  In sum, Plaintiff, who sustained injuries from a fall at work, claims Defendant

discriminated against him in two respects: failed to reasonably accommodate his disability by

refusing his requests that he be permitted to work from home or given an extended unpaid medical

leave; and, illegally retaliated against him when he made such requests.  Because I conclude that

Plaintiff's retaliation claims are essentially wrapped up in his failure to accommodate claims, the

issues raised by Defendant's motion for summary judgment are narrow – is Plaintiff a "qualified

individual" under the ADA and, if yes, were his accommodation requests reasonable under the

regulatory framework.  After considering the parties' summary judgment papers (docs. 19, 23, 27),

I recommend Defendant's motion for summary judgment (doc. 19) be granted for the reasons

Defendant advances.[1]

---

[1] The district judge referred the matter to me for a Report and Recommendation (doc. 22).  *See* 28 U.S.C. § 636 and Local Rule 6.01.

A.  *Standard of Review*

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1279-80 (11th Cir. 2004).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*  Essentially, an issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case, and an issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  In considering the evidence, the court resolves all reasonable doubts about the facts in favor of the non-moving party and draws all justifiable inferences in its favor.  *Id.* at 1260.  The court does not, however, weigh the evidence or make findings of fact.  *Anderson*, 477 U.S. at 249-50.

B.  *Background*

The material facts for summary judgment purposes are not in dispute.  Defendant provides fulfillment services such as data processing, hybrid marketing, and customer service to its marketing partners in a variety of direct marketing businesses (doc. 19, Exh. A, Tom Johnston Affidavit ("Johnston Aff."), ¶ 5).  Plaintiff began working for Defendant in January 1998 as a customer service representative (*id.*, ¶ 6). More than a decade before this, he suffered a spinal injury which required

2

him to use a wheelchair or walker.  His impairments also demanded extensive annual leave; indeed, he regularly exhausted his yearly vacation and sick time (doc. 19, Exh. B, Plaintiff's Depo., pp. 19, 85-89 and Exh. C, Transcript of Proceedings before Court of Compensation Claims ("WC Hearing"), p. 45-46).  Notwithstanding, Plaintiff continued to receive performance evaluations that met or exceeded expectations (Plaintiff's Depo., pp. 89-90).  But on May 22, 2007, the Plaintiff's status changed when he fell in a work restroom injuring his head and right hand (*id.*, p. 93-94). Afterwards, Plaintiff consulted with physicians routinely and only worked sporadically.

Plaintiff returned to work with intermittent absences through mid-July (Johnston Aff., Exh. 4; Plaintiff's Depo., p. 104).  On July 13, 2007, Dr. Glencross, a physician who treated him under his workers-compensation plan, restricted Plaintiff to working only four-hour shifts and recommended 15-minute breaks from the phones and typing each hour (*id.*, ¶ 8; Plaintiff's Depo., p. 108, Exh. 55).  Defendant accommodated Plaintiff's restrictions (*id.*).  Plaintiff also met with  an orthopaedist, Dr. Guttentag, who released Plaintiff to full-time work on August 6, 2007, but with the restriction of no excessive use of the right upper extremity (Plaintiff's Depo., Exh. 57).  Two days later, Plaintiff's workers-compensation case nurse sent an e-mail to Defendant's Safety and Security Supervisor Tom Johnston ("Johnston") indicating Dr. Guttentag released Plaintiff to full-duty work; however, she omitted any reference to Dr. Guttentag's noted restriction (Johnston Aff., ¶ 9, Exh. 3). Accordingly, at that time, Johnston erroneously believed Plaintiff had been released to full duty as of August 6, 2007 (*id.*).

A few days later, Plaintiff called his supervisor and left a message indicating he would not be able to report to work that day because he needed the use of both of his arms to utilize his walker or wheelchair and did not have that capability (Plaintiff's Depo., p. 117).  The next day, Plaintiff met

with Dr. Tresser, who noted that Plaintiff indicated he had begun to obtain some improvement and, therefore, Dr. Tresser recommended no surgical intervention and released Plaintiff to regular duty with no restrictions as of August 15, 2007 (*id.*, p. 118-19, Exh. 59).  Following that, Plaintiff met with Dr. Guttentag, who noted Plaintiff could return to work with no excessive overhead lifting, pushing, or pulling as of September 5, 2007 (Johnston Aff., Exh. 5).  A day later, he visited with Dr. Lowe, who wrote Plaintiff a note excusing him from work on September 5 and 6 and noting Plaintiff could return to work on September 7 (Plaintiff's Depo., pp. 125-126, Exh. 62).  Plaintiff did not, however, return to work for Defendant on or after September 6, 2007 (*id.*, pp. 126, 128).

About six weeks later, on October 19, 2007, Plaintiff submitted his petition for workers' compensation benefits (Johnston Aff., ¶ 13, Exh. 6).  By his petition, Plaintiff sought payment of temporary total disability benefits from September 5, 2007, through the date of filing his petition and continuing through his final hearing or exhaustion of his 104 weeks of disability benefits because he believed he was totally disabled and unable to work at that time (*id.*; Plaintiff's Depo., pp. 219-20).  In pursuing his workers' compensation benefits, Plaintiff saw Dr. Henderson on November 19, 2007, for an independent medical examination (*id.*, p. 131, Exh. 66).  Dr. Henderson saw "no reason [Plaintiff] cannot work at least a light duty job with limited use of his right hand" (*id.*, p. 133, Exh. 66).  On November 19, 2007, Plaintiff's supervisor sent Johnston and Human Resources Manager Kranise Hunt Hawthorne ("Hawthorne") an e-mail referencing, amongst other things, an upcoming deposition and hearing related to legal proceedings (doc. 23, Exh. C, Kranise Hawthorne Deposition ("Hawthorne Depo.), pp. 43-44, Exh. 3).

On November 21, 2007, Hawthorne sent Plaintiff a letter explaining Defendant had not received any documentation substantiating his extended absence from work (*id.*, Exh. 1).  Indeed,

4

although the letter inaccurately stated Plaintiff had been released to work at full duty status by Dr. Guttentag as of August 8, 2007, Defendant had not received any documentation from Plaintiff's doctors or the nurse care manager in charge of his workers' compensation benefits claim substantiating his inability to work during the period from September through November 2007 nor any letters from Plaintiff requesting accommodations (WC Hearing, p. 266-67).  The medical documentation received by Defendant during that time indicated Plaintiff had restrictions but could work (*id.*).  Accordingly, the letter provided notice to Plaintiff that Defendant expected him to report to work by November 27, 2007, or, if he failed to do so, Defendant would consider him to have voluntarily resigned as of that date (Hawthorne Depo., Exh. 1).  In fact, at no time between September 5, 2007, and the mailing of the letter on November 21, 2007, did Plaintiff provide any letters stating he could not work, informing Defendant of any restrictions, or requesting any accommodations from Defendant (WC Hearing, p. 266-67).

Following receipt of the November 21, 2007, letter, Defendant's Vice President of Human Resources Maggie Harris ("Harris") received a telephone call from Plaintiff on November 26, 2007, during which Johnston was also present (Johnston Aff., ¶ 15).  During the telephone conversation, Plaintiff acknowledged receipt of the November 21, 2007, letter and informed Harris and Johnston he could not return to work because he could not get from place to place due to his right arm restrictions (Plaintiff's Depo., pp. 141, 160, 237).  The conversation then turned to Plaintiff's failure to provide documentation relating to his continued absence from work and relating to his purported restrictions as well as discourse regarding the accommodations Defendant could provide for Plaintiff's restrictions (*id.*, p. 140, 160; Johnston Depo., pp. 134-35).  Around the time of this telephone conversation, Plaintiff also informed someone at work that he needed a motorized scooter

and was in the process of obtaining such (*id.*, pp. 141, 160, 237).

In addition to the phone call, Plaintiff sent a letter dated November 26, 2007, to Harris responding to the November 21, 2007, letter (*id.*, p. 143, Exh. 69).  His letter informed Harris he wanted to return to work but was unable to do so as a result of his right arm restrictions because use of both arms was necessary to ambulate with his walker (*id.*, Exh. 69).  Plaintiff explained that his doctors acknowledged he needed therapy for his arm and also mentioned that Dr. Guttentag wrote him a prescription for a motorized scooter but that workers' compensation denied that request (*id.*).  Further, Plaintiff offered to work from home doing e-mails as he had done previously when working overtime hours (*id.*).

Attached to the letter, Plaintiff included copies of documentation regarding his absences and restrictions (WC Hearing, p. 268-70; Johnston Aff., ¶¶ 16-17, Exhs. 7-8).  On November 27, 2007, Johnston reviewed the letter from Plaintiff, including the attachments (Johnston Aff., ¶ 16).  Plaintiff failed to report to work on November 27, 2007 (Plaintiff's Depo., p. 145).  Defendant treated Plaintiff's failure to report to work and  failure to provide sufficient medical documentation substantiating his inability to work as a voluntary resignation and therefore terminated Plaintiff's employment that day (WC Hearing, p. 271-272).

### C.  Discussion

#### 1.  ADA and FCRA Disability Discrimination

Plaintiff alleges Defendant discriminated against him based on his disability in violation of the ADA (Count I) and the FCRA (Count II).  *See* 42 U.S.C. § 12111, *et seq.*, and Fla. Stat. § 760.01, *et seq.*  Under the ADA, an employer may not discriminate against  "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of

employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see* 29 C.F.R. § 1630.4; *Earl v. Mervyns*, *Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). Likewise, the FCRA prevents employment discrimination based on disability. Fla. Stat. § 760.10. In the absence of direct evidence of discrimination, a plaintiff may establish a *prima facie* case of an ADA violation through circumstantial evidence using the burden-shifting analysis utilized in Title VII employment discrimination cases. *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001). To establish a *prima facie* case of discrimination under the ADA and the FCRA, a plaintiff must show: (1) he is disabled; (2) he was a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability. *Earl*, 207 F.3d at 1365; *see Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000) (recognizing courts analyze discrimination actions under the FCRA using the same framework as the ADA). Disability under the ADA is defined as a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1). In this instance, Defendant does not dispute Plaintiff has a disability within the meaning of the ADA. *See id.* Instead, Defendant contends Plaintiff is not a qualified individual and, further, Plaintiff cannot establish he was discriminated against because of his disability.

A "qualified individual" is one who can perform the essential functions and job requirements of the position held with or without reasonable accommodation. 42 U.S.C. § 12111(8); *see* 29 C.F.R. § 1630.2(m); *Earl,* 207 F.3d at 1365. Accordingly, an ADA plaintiff must show either he can perform the essential functions of his job without accommodation, or, if not, he can perform the essential functions of the job with a reasonable accommodation. *Holly v. Clairson Indus., L.L.C.*,

492 F.3d 1247, 1256 (11th Cir. 2007).  If a plaintiff is unable to perform an essential function of his position, even with an accommodation, the plaintiff is, by definition, not a "qualified individual" and therefore not covered under the ADA.  *Davis v. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).

A reasonable accommodation consists of modifications or adjustments to the work environment, or to the manner or circumstances under which the position held is customarily performed, that enable a qualified individual with a disability to perform the essential functions of the position.  29 C.F.R. § 1630.2(o)(1)(ii).  To reasonably accommodate a qualified individual, an employer may make existing facilities used by employees readily accessible to and usable by individuals with disabilities and provide job restructuring, part-time or modified work schedules, acquisition or modifications of equipment or devices, and adjustment or modifications of policies. 29 C.F.R. § 1630.2(o)(2)(i)-(ii).  Where the plaintiff cannot demonstrate a reasonable accommodation, "the employer's lack of investigation into reasonable accommodation is unimportant."  *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997).

If a reasonable accommodation can be demonstrated by the plaintiff, the failure to make reasonable accommodations to the known physical limitations of an otherwise qualified individual constitutes discrimination, except where the employer can show the accommodation would impose an undue hardship upon the operation of its business.  42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9.  A qualified individual is not, however, entitled to the accommodation of his choice, but rather to a *reasonable* accommodation.  *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997).  An employer need not accommodate an employee in any manner the employee desires nor reallocate job duties to change the essential functions of the job.  *Earl*, 207

F.3d at 1367.  Of course, a qualified individual may choose not to accept an accommodation.  29 C.F.R. § 1630.9(d).  If such individual rejects a reasonable accommodation that is necessary to enable that individual to perform the essential functions of his position, and therefore cannot, as a result of his rejection, perform the essential functions of the position, that individual will not be considered a qualified individual.  *Id.*

The burden of identifying an accommodation which would allow a qualified individual to perform his job, as well as the ultimate burden of persuasion with respect to demonstrating such an accommodation is reasonable, at all times lies with the individual.  *Stewart*, 117 F.3d at 1286.  Here, Plaintiff contends he requested alternative accommodations from Defendant on or around November 26, 2007: an extension of leave time until he was physically able to return to work as well as the option to work from home.  Instead, the only accommodation offered to him by Defendant was to move his desk closer to the door (Plaintiff's Depo., pp. 140, 160, 237).  Additionally, around that time, Plaintiff recollects mentioning to someone at work that he could not get from point A to point B, had ordered a motorized scooter, and would return to work once he could get from point to point (*id.*, p. 237).  According to Johnston, during the November 26, 2007, telephone call between Johnston, Harris and Plaintiff, the only discussion regarding accommodations involved Defendant's offer to accommodate Plaintiff's right arm restrictions (Johnston Depo., p. 134; Johnston Aff., ¶ 15, Exh. 7).  During the call, Johnston recollects, Plaintiff did not request that he be allowed to work from home, did not mention a motorized scooter, did not ask for a helper, and did not request Defendant move his desk (Johnston Aff., ¶ 15).  The first request to work from home was in

Plaintiff's November 26, 2007, letter (*id.*, ¶ 20).[2]

Notwithstanding, Defendant contends it could accommodate Plaintiff's right arm restrictions and, to the extent Plaintiff requested an indefinite leave of absence or to work from home, those accommodations were not reasonable. At the time Defendant sent Plaintiff the November 21, 2007, letter, it inaccurately believed Plaintiff had been cleared to work with no restrictions as of August 8, 2007. Irrespective, Plaintiff was cleared as of September 5, 2007, to work with no excessive overhead lifting, pushing, or pulling, and again cleared to work as of November 19, 2007, with limited use of his right arm, as the documents provided by Plaintiff on November 26, 2007, indicated (*id.*, ¶ 17, Exh. 8). According to Johnston, Defendant could accommodate Plaintiff's right arm restrictions and any other restrictions by, *inter alia*, moving his desk closer to the door, adjusting his desk to accommodate a motorized wheelchair, providing him with a handicap parking space close to the door, or providing him a helper (*id.*, ¶ 12).

Plaintiff did not request any of those accommodations, however. Instead, Plaintiff requested the option to work from home and for an indefinite extension of leave time. Given the facts of this case, neither of Plaintiff's purported accommodations could be deemed "reasonable." *See Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1527 (11th Cir. 1997) ("Significantly, what is reasonable for each individual employer is a highly fact-specific inquiry that will vary depending on the circumstances and necessities of each employment situation."). First, Plaintiff's request to work from home did not constitute a reasonable accommodation because that accommodation would not allow Plaintiff to perform the essential functions of his job. "Essential functions" consist of the

---

[2] To the extent these versions conflict, I accept for summary judgment purposes the Plaintiff's account.

fundamental job duties of the employment position an individual with a disability performs.  29

C.F.R. § 1630.2(n)(1).  A function may be essential, for instance, where the reason the position exists

is to perform that function.  29 C.F.R. § 1630.2(n)(2)(i).  In determining the essential functions of

a position, the ADA dictates "consideration shall be given to the employer's judgment as to what

functions of a job are essential, and if an employer has prepared a written description before

advertising or interviewing applicants for the job, this description shall be considered evidence of

the essential functions of the job."  42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(3)(i), (ii).

Defendant identifies the primary duties of a customer service representative as answering the

telephone, handling callers' concerns, connecting callers to the appropriate department or individual,

adjusting accounts in Defendant's database, processing e-mails, handling faxes, and entering

customer information into the computer system (Johnston Aff., ¶ 6).  As the job description

indicates, customer service representatives "[a]nswers inbound calls on a continuous basis according

to the policies and procedures established by Defendant and/or the client to meet established

production goals" (*id.*, Exh. 1).  In addition, Defendant requires customer service representatives to

maintain an on-site presence because Defendant provides them with in-person monitoring,

evaluating, and counseling (*id.*).  According to Defendant, two of the essential functions of a

Defendant customer service representative, therefore, include regular on-site attendance and handling

telephone calls (*id.*, ¶ 20).

By its very nature, working from home would prevent Plaintiff from fulfilling the essential

function of regular on-site attendance.  The ADA does not mandate an employer eliminate essential

functions of a position to accommodate an employee.  *Whillock v. Delta Air Lines*, 926 F. Supp.

1555, 1565 (N.D. Ga. 1995), *aff'd at* 86 F.3d 1171 (11th Cir. 1996); *see Earl*, 207 F.3d at 1367.  In

essence, if Defendant accommodated Plaintiff's request to work from home, Defendant would be doing just that – eliminating on-site attendance as an essential function of Plaintiff's position. This Defendant is not required to do. *Id.* ("The ADA does not require that Defendant abandon the essential function of attendance at the job to accommodate Plaintiff."); *see Earl*, 207 F.3d at 1367 (finding an employer need not accommodate an employee in any manner the employee desires nor reallocate job duties to change the essential functions of the job); *see Carlson v. Liberty Mut. Ins. Co.*, 237 Fed. App'x 446, 449-50 (11th Cir. 2007) (affirming an award of summary judgment in favor of defendant and noting that, in certain situations, daily attendance may be an essential function of a position and finding that at least some presence in the office was an essential function of the plaintiff's position).

Moreover, as of November 2007, Defendant did not have the technological capabilities to enable customer service representatives to handle phone calls from the employee's home (Johnston Aff., ¶ 20). As a result, Plaintiff could not perform the essential function of handling telephone calls from home. Although Plaintiff contends he could handle e-mails from home as he had done previously for overtime hours, Defendant only allowed eligible customer service representatives to work overtime hours handling e-mails at home when a business need arose, which typically occurred seasonally on a limited basis (*id.*, ¶ 21). Defendant did not allow customer service representatives to respond to telephone calls on behalf of Defendant from home on a daily basis (*id.*). Accordingly, as Plaintiff could not perform two essential functions of his position by working at home, the request for that accommodation was unreasonable. *See Holly*, 492 F.3d at 1256 (noting an accommodation is "reasonable" only where it enables the employee to perform the essential functions of the job).

Similarly, based on the record, Plaintiff's request for an indefinite leave of absence did not

12

constitute a reasonable accommodation because that accommodation would not allow Plaintiff to perform the essential functions of his job presently or in the immediate future.  While a request for a leave of absence may be a reasonable accommodation in some instances, Plaintiff requested an *indefinite* leave of absence from Defendant (Plaintiff's Depo., p. 160).  Indeed, though Plaintiff stated he sought more leave time, he acknowledged, as of November 26, 2007, he could not provide a definitive time frame to Defendant for his return to work (*id.*).  A request for an indefinite leave of absence is not a reasonable accommodation because, namely, it is not an accommodation which allows a plaintiff to continue work in the present but, instead, in the future at some indefinite time. *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003), *cert. denied* 540 U.S. 982 (2003).  Like the plaintiff in *Wood*, Plaintiff had been granted years of discretionary leave and, at the time Defendant sent Plaintiff the November 21, 2007, letter, he had been on leave for more than two months and had not provided documentation necessitating his continued absence from work nor warranting future absence from work.[3]  *See id.*  He made no suggestion as to when he thought he could or would be able to report to work and, in fact, concedes he had no idea how much time he needed before he believed he could report to work.  His indefinite leave request is at odds with the repeated recommendations by his doctors that Plaintiff could return to work with only various right arm restrictions.

In addition, Plaintiff reference to his motorized scooter does little to bolster his position, for, although Plaintiff informed Defendant that Dr. Guttentag had prescribed him a motorized scooter,

---

[3]   Just because Defendant had previously accommodated Plaintiff's requests for extensive leave over the course of his nearly 10 years of employment, it does not necessarily make that accommodation reasonable.  *Id.* (noting "prior accommodations do not make an accommodation reasonable).

he told Defendant the request had been denied by workers' compensation (Johnston Aff., Exh. 8). Plaintiff did not explain to Defendant that he might obtain a motorized scooter through a different doctor or offer a time frame within which he thought he might obtain a motorized scooter or even that, if he obtained a motorized scooter, he could return to work within a definitive period of time.[4] In November 2007, Plaintiff could not demonstrate his request for an indefinite amount of leave time or the possibility of obtaining a motorized scooter would allow him to perform the essential functions of his job presently or in the immediate future. *See Wood*, 323 F.3d at 1314; *see Holly*, 492 F.3d at 1256 (noting an accommodation is "reasonable" only where it enables the employee to perform the essential functions of the job). As such, Plaintiff cannot show, and a reasonable juror could not conclude that his request for an indefinite amount of leave time constituted a reasonable accommodation. Given the foregoing, Plaintiff cannot demonstrate that either of the accommodations he requested were reasonable and, therefore, would allow him to perform the essential functions of his job.

Even if Plaintiff could show that either of those accommodations were reasonable, and he could therefore perform the essential functions of his position with a reasonable accommodation, Plaintiff cannot establish he was discriminated against because of his disability. Plaintiff had not reported to work for more than two months but yet failed to provide Defendant with any documentation explaining the necessity of or reason for his extended absence. As the November 21, 2007, letter clearly indicated, Defendant requested documentation substantiating Plaintiff continued

---

[4] Though Plaintiff received a motorized scooter four days after the termination of his employment from Defendant (Plaintiff's Depo., p. 160-61), prior to that date, he could not provide a time frame within which he believed he would obtain the motorized scooter or within which he could report to work.

absence from work and informing him in no uncertain terms his failure to report to work on

November 27, 2007, would result in Defendant assuming he had voluntarily resigned his position

(Hawthorne Depo., Exh. 1).  Plaintiff *thereafter* requested accommodations be made to allow him

to return to work.  He provided documentation which, however, did not substantiate his extended

or continued absence from work but rather reiterated that Plaintiff only had right arm restrictions and

could continue to work with those noted restrictions (Johnston Aff., Exh. 8).   Following that,

Plaintiff failed to report for work as directed on November 27, 2007.  In accordance with its explicit

admonition, Defendant considered Plaintiff to have voluntarily resigned.  Given this sequence of

events, a reasonable juror could not conclude that Plaintiff was discriminated against *because of* his

disability.   Accordingly, as Plaintiff cannot establish he was a qualified individual or was

discriminated against because of his disability, I recommend summary judgment be granted as to

Counts I and II.

*2. ADA and FCRA Disability Retaliation*[5]

Plaintiff also contends Defendant retaliated against him in violation of the ADA (Count III)

and the FCRA (Count IV).  Specifically, Plaintiff asserts Defendant retaliated against him by

terminating his employment after he requested a reasonable accommodation on or before November

26, 2007.  Retaliation claims under the ADA and FCRA are assessed under the same burden-shifting

---

[5]  The Plaintiff's retaliation claims are essentially wrapped up in his failure to
accommodate claims, which I have already rejected.  This is reason alone to deny the retaliation
claims.  *See Santacrose v. CSX Transp.*, 288 Fed. App'x 655, 658 (11th Cir. 2008) (affirming
summary judgment in favor of defendant on plaintiff's retaliation claim and noting the
"retaliation claim fails because it merely reclothes [plantiff's] ADA discrimination claim, which
we have already rejected" where the retaliation was based on the plaintiff's request for an
accommodation).  Nonetheless, given the nature of this Report, I discuss the merits of the
retaliation claims.

framework employed for Title VII retaliation claims.  *Stewart*, 117 F.3d at 1287; *Sicilia v. United Parcel Serv., Inc.*, 279 Fed. App'x 936, 939 n. 6 (11th Cir. 2008) (noting retaliation claims under the FCRA and the ADA are both analyzed under the same framework as Title VII claims).  To establish a *prima facie* case of retaliation under the ADA and the FCRA, a plaintiff must demonstrate: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action.  *Id.*  Even assuming that Plaintiff could establish the first two elements of his retaliation claims, he cannot establish a causal connection exists between any alleged protected conduct and the termination of his employment with Defendant on November 27, 2007.

As mentioned above, the record indicates Plaintiff did not request an accommodation relating to his right arm restrictions prior to Defendant's November 21, 2007, letter.  Rather, the record reflects Plaintiff had not reported to work since the first week of September and his main correspondence with Defendant during the period from September through November 21, 2007, involved his calling Defendant on multiple occasions to inform his supervisor he would not be reporting for work.  Indeed, Plaintiff's request for an accommodation did not occur until *after* Defendant sent the November 21, 2007, letter informing Plaintiff if he did not report for work on November 27, 2007, Defendant would consider his failure to report as a voluntary resignation.  At most, the record reflects Plaintiff requested accommodations during the November 26, 2007, phone call and subsequently in his November 26, 2007, letter to Harris.  At that time, Defendant had already sent Plaintiff the letter informing him of the consequence for a failure to report to work on

November 27, 2007.[6]  As Plaintiff admits, he failed to report for work on November 27, 2007 (Plaintiff's Depo., pp. 145, 159-60).  In accordance with its statement in the November 21, 2007, letter, Defendant treated Plaintiff's failure to report to work as a voluntary resignation as a result of Plaintiff having abandoned his position (*id.*, p. 159-60).

A causal connection between Plaintiff's request for an accommodation on November 26, 2007, and subsequent termination of his employment with Defendant on November 27, 2007, therefore does not exist.  Rather, after an extended absence from work with no documentation substantiating the need for such absence, Plaintiff's failure to report to work on November 27, 2007, as directed by Defendant, resulted in Defendant considering him to have voluntarily resigned, and a reasonable juror could not find to the contrary.  Accordingly, as Plaintiff cannot establish a causal connection between any protected activity and the termination of his employment with Defendant, summary judgment should be granted as to Counts III and IV.[7]

_____

[6]  At the time Hawthorne sent the letter, Hawthorne was not aware of the release from Dr. Henderson for Plaintiff to work with limited use of the right arm, neither she or Johnston had received the release from Dr. Henderson, she had not seen the release from Dr. Guttentag dated August 6, 2007, limiting Plaintiff to no excessive use of his right upper extremity, and she was not aware that Plaintiff had been involved in a work-related accident or had filed workers' compensation claims proceeding against Defendant and its insurance carrier (doc. 19, Exh. E, Kranise Hunt Hawthorne Affidavit ("Hawthorne Aff."), ¶ 5; Johnston Aff., ¶ 14).

[7]  If Plaintiff could establish a causal connection between protected conduct and any adverse action, the burden would shift to Defendant to provide a legitimate non-discriminatory reason for its actions negating the inference of retaliation.  *Stewart*, 117 F.3d at 1287 (setting forth the burden shifting framework applicable to an ADA retaliation claim).  Defendant has done so.  At that point, Plaintiff would have to establish that the proffered non-discriminatory reasons are pretextual.  *Id.*  Here, Plaintiff cannot show that Defendant's legitimate non-discriminatory reason for terminating him, *i.e.* his extended and continued absence from work without justification and failure to report to work as directed, was pretextual.  Again, as the record reflects, after an extended absence from work, Defendant afforded Plaintiff an opportunity to provide Defendant with documentation from doctors justifying his continued absence and gave him a date certain by which to produce himself for work or Defendant would assume he

### 3. Workers' Compensation Law Retaliation

Additionally, Plaintiff alleges Defendant retaliated against him in violation of the Workers' Compensation Law (Count V). Under Section 440.205, Florida Statutes, "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." If an employer violates this section, the employee may assert a cause of action for retaliatory discharge. *Borque v. Trugreen, Inc.*, 389 F.3d 1354, 1357 (11th Cir. 2004) (citing *Smith v. Piezo Tech. & Prof'l Adm'rs.*, 427 So.2d 182, 183-84 (Fla. 1983)). Under this provision, a plaintiff must show: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal connection between the protected expression and the adverse action. *Edwards v. Niles Sales & Serv., Inc.*, 439 F. Supp. 2d 1202, 1228 (S.D. Fla. 2006) (citing *Russell v. KSL Hotel Corp.*, 887 So.2d 372, 379 (Fla. 3d DCA 2004). As with his ADA and FCRA retaliation claims, Plaintiff cannot show a causal connection between any protected activity and the termination of his employment.

Plaintiff initiated his workers' compensation claim two days after his fall at Defendant in May 2007 when he sought medical treatment for his injuries from Dr. Glencross (Plaintiff's Depo., p. 97; Johnston Aff., ¶ 7). Plaintiff continued treating with doctors covered under workers' compensation throughout the six-month period leading up to his voluntary resignation. In October 2007, more than a month before Defendant sent Plaintiff the November 21, 2007, letter, Plaintiff

---

voluntarily resigned. Plaintiff failed to produce documentation from any physician recommending he not report back to work or suggesting he was unable to work and thereafter failed to report to work on the date Defendant directed. Defendant accepted Plaintiff's failure to report to work as a voluntary resignation because, essentially, Plaintiff had abandoned his position. Plaintiff has not proffered any evidence indicating Defendant's legitimate, non-discriminatory reasons for terminating his employment were pretextual.

submitted his petition for workers' compensation benefits (Johnston Aff., ¶ 13, Exh. 6).  Plaintiff

has failed to demonstrate how any of those activities are causally connected to Defendant's decision

to consider Plaintiff to have voluntarily resigned.  As Hawthorne, the author of the November 21,

2007, letter attests to,

> Neither the fact that Plaintiff had exercised his rights under the Florida Workers'
> compensation law nor the fact that he had a disability were factors in the decision to
> send the letter dated November 21, 2007 to Plaintiff.  The November 21, 2007 letter
> was sent to Plaintiff because he had failed to report to work since September 5, 2007
> and had failed to submit documentation substantiating the need for his extended
> absence.

(Hawthorne Aff., ¶ 6).

Plaintiff asserts the close temporal proximity of his petition for benefits and the termination

of his employment relationship with Defendant establishes a prima facie case of retaliation under

the Workers' Compensation Law.  Typically, "a plaintiff may use a showing of 'close' temporal

proximity between the protected expression and the adverse employment action to establish

causation." *Posada v. James Cello, Inc.*, 135 Fed. App'x, 250, 252 (11th Cir. 2005).  Here, Plaintiff

filed his initial request for workers' compensation coverage six months before Defendant sent him

the November 21, 2007, letter and continued to receive covered treatment periodically before

Defendant sent the letter.  Plaintiff focuses his temporal proximity argument on a November 19,

2007, e-mail correspondence in which Plaintiff's supervisor mentioned, among other things,

Plaintiff's upcoming deposition related to the "legal part of this" (Hawthorne's Depo., Exh. 3).  A

quick review of the entire e-mail correspondence indicates the receiving parties did not discuss or

even reference Plaintiff's legal proceedings or workers's compensation benefits in general but rather

address the questions related to open enrollment information Plaintiff has asked of his supervisor.

Irrespective, although Plaintiff argues to the contrary, temporal proximity of a voluntary resignation to a claim for workers' compensation benefits cannot, standing alone, establish a claim for retaliation under the Workers' Compensation Law where, as here, the voluntary resignation did not occur until Plaintiff essentially abandoned his position.   Indeed, in upholding summary judgment for an employer on a claim for retaliation under the Workers' Compensation Law, the Eleventh Circuit stated that the "mere temporal proximity of [plaintiff's] constructive resignation to his requests for workers' compensation cannot establish the prima facie case required for a retaliation claim where the company took no affirmative action to remove [plaintiff] from the payroll until [plaintiff] abandoned his job." *Borja v. Hines Nurseries, Inc.*, 172 Fed. App'x 927, 929 (11th Cir. 2006).

Accordingly, Plaintiff has failed to establish a causal connection exists between his request for workers' compensation benefits and Defendant's consideration of his failure to report to work as a voluntary resignation.   For that reason, summary judgment should be granted as to Count V.[8]

*D. Conclusion*

After consideration, it is hereby

RECOMMENDED:

1.  Defendant's motion for summary judgment (doc. 19) be granted.

IT IS SO REPORTED in Tampa, Florida, on May 5, 2011.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

---

[8]  Again, assuming Plaintiff could demonstrate a causal connection between his claim for workers' compensation benefits and the termination of his employment with Defendant, for the reasons set forth above, he cannot demonstrate Defendant's legitimate non-retaliatory reason for considering his failure to report to work on November 27, 2007, as a voluntary resignation is pretextual.  *See, supra*, note 3.

## <u>NOTICE TO PARTIES</u>

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).

cc:     The Honorable James D. Whittemore
        Counsel of Record

21